# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| Savy Surfers, Inc. f/k/a<br>International Audio Visual, Inc., | ) <br> ) <br> ) | |
| Plaintiff, | ) <br> ) | **ORDER DENYING PLAINTIFF'S<br>MOTION IN LIMINE** |
| vs. | ) <br> ) | |
| Wings of Minot ND LLC d/b/a<br>Wings of Minot, | ) <br> ) <br> ) | Case No. 1:17-cv-164 |
| Defendant. | ) | |

Before the Court is a motion in limine regarding the admissibility of an email filed by the Plaintiff, Savy Surfers, Inc. f/k/a International Audio Visual, Inc. ("Savy Surfers") on September 7, 2018. See Doc. No. 15. The Defendant, Wings of Minot ND LLC d/b/a Wings of Minot ("Wings"), filed a brief in opposition to the motion in limine on September 28, 2018. See Doc. No. 22. On October 5, 2018, Savy Surfers filed a reply brief. See Doc. No. 23. For the reasons set forth below, the motion in limine is denied.

## I.  BACKGROUND

In 2014, NCP Inc. d/b/a Entertech AVL ("Entertech") provided Wings with audio visual equipment which Entertech then installed at the Buffalo Wild Wings restaurants in Minot and Dickinson, North Dakota, during the construction of those restaurants. Entertech also provided audio visual equipment to Dani Reichenberger, a principal of Wings, and installed the equipment at his residence. Upon completion of the construction projects, Wings requested invoices from construction vendors in order to pay the vendors and close its construction loan. After closing the

1

construction loan, Wings negotiated new terms of the loan to include payment of the balance over a period of seven (7) years at a 4% interest rate.

On July 19, 2016, Entertech provided Reichenberger with Invoice No. 22636, showing he owed $86,633.49 to Entertech. See Doc. No. 1-5. The next day, Entertech provided Wings with Invoice Nos. 22648 and 22649, evidencing Wings owed the amounts of $3,489.07 and $119,383.22, respectively, to Entertech. See Doc. Nos. 1-2 and 1-3. Then on July 21, 2016, Entertech provided Wings with another invoice – Invoice No. 22666 - showing Wings owed an additional $1,165.91 to Entertech. See Doc. No. 1-4. In sum, based upon invoices provided to Wings, Wings and Reichenberger jointly owed to Entertech $210,671.69. On August 31, 2016, Nita Wagner with Entertech sent a letter to Ken Herslip with Wings demanding payment of the $210,671.69 owed by Wings to Entertech. See Doc. No. 1-6. In the letter, Wagner requested payment from Wings "in full no later than October 15[,] 2016." Id. Wagner further indicated in the letter: "Open balance at that date will be forwarded to third party for collection, and may incur additional fees. In addition, lack of payment may result in notification to Buffalo Wild Wings Corporate office." Id.

On September 27, 2016, Herslip sent an email to Briten Gilbertson at Entertech, stating the following:

> Briten:
>
> Thanks for your letter and phone calls….I wish things where [sic] different for you and Entertech…However your misfortune and lack of accounting has put our company in a [sic] extremely bad way…Here is what we are up against.
>
> We just finished a loan adjustment with our lenders as our company was not in compliance with our original loan agreement. We have seen sales drop by 40% to 50% in our business since we completed Dickinson ND. We built Dickinson ND and secured a $5.2 million dollar loan and with in the loan agreement we have a 2 year lock out period (which is coming up shortly) however after that we have a 4% prepayment fee. We also have a limit of $50,000 cap for any new debit we can

obtain with anyone including share holder with out getting written permission from our lenders first.

We had the funds available before we closed on our loan, however we assumed all debits where [sic] paid when we closed with our loan. Entertech has put our company in a very procuress [sic] situation.

I will again offer the $2,870.45 payment which is the amount owed at 4% interest for 7 years, that's the same terms as we got on our loan. That is all I can offer and the BEST we can do given the circumstance that Entertech has put us in.

The threat of notifying corporate Buffalo Wild Wings does not change what we can and can't do. It just makes matters worse between Entertech and Wings of Minot LLC, meaning once corporate is notified we will be force[d] to notify our attorney and remove our offer of settlement. I hope you find this offer expectable [sic] and we can both move on.

Regards:
Ken F. Herslip

See Doc. No. 1-7.

On October 11, 2016, International Audio Visual, Inc. ("IAVI"), now known as Savy Surfers, Inc., sent Wings a letter requesting that those amounts due to Entertech be paid directly to IAVI. See Doc. No. 1, p. 5. This request was based upon IAVI's security interest in Entertech's accounts receivable, granted to IAVI through a Security Agreement entered into by and between Entertech and IAVI earlier in 2016.[1] In November 2016, IAVI demanded payment from Wings; however, Wings did not pay any amounts to IAVI. Consequently, IAVA instituted this action on August 7, 2017, to recover those amounts Entertech invoiced to Wings.

On September 7, 2018, Savy Surfers filed the present motion requesting the Court issue an order holding Federal Rule of Evidence 408 inapplicable to the email dated September 27, 2016, from Ken Herslip to Briten Gilbertson and such email admissible at trial. In its motion, Savy

---

[1] Entertech and IAVI entered into a Security Agreement and Forbearance Agreement because Entertech owed IAVI nearly $2 million dollars for equipment IAVI had supplied to Entertech. Entertech's failure to make payments pursuant to the Forbearance Agreement triggered the provision of the Security Agreement permitting IAVI to collect on the debt owed to Entertech. See Doc. No. 1, pp. 4-5.

Surfers further contends Federal Rule of Evidence Rule 801(d)(2) applies and the email is not hearsay. The Defendant opposes the motion and contends Rule 408 precludes the admission of the September 27, 2016 email at trial.

## II. LEGAL DISCUSSION

Rule 408 of the Federal Rules of Evidence prohibits the use of offers to compromise in some circumstances:

> (a) **Prohibited Uses**. Evidence of the following is not admissible – on behalf of any party – either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:
>
>  (1) Furnishing, promising, or offering – or accepting, promising to accept, or offering to accept – a valuable consideration in compromising or attempting to compromise the claim; and
>
>  (2) Conduct or a statement made during compromise negotiations about the claim – except when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority.
>
> (b) **Exceptions.** The court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

Fed. R. Evid. 408. Savy Surfers contends Rule 408 does not apply to the Herslip email of September 27, 2016, because at the time of the email, "neither the validity nor the amount of the claim was disputed . . . ." In response, Wings contends the Herslip email falls squarely within the scope of Rule 408 and is inadmissible, reasoning that based on the context of the email, as well as deposition testimony, a disputed claim clearly existed at the time Herslip sent the email.

Rule 408 prohibits the admission of evidence relating to a compromise or an offer to compromise "to prove or disprove the validity or amount of a disputed claim" or "to impeach by a prior inconsistent statement or a contradiction." Fed. R. Evid. 408(a). If a claim is in dispute at

the time of the offer to compromise, such evidence is inadmissible.  Weems v. Tyson Foods, Inc., 665 F.3d 958, 965 (8th Cir. 2011).  However, the Eighth Circuit has recognized "a dispute need not crystallize to the point of threatened litigation" for the evidence of a compromise to be excluded under Rule 408.  Id.  Instead, a dispute exists when there is "an actual dispute or difference of opinion" regarding a party's liability for or the amount of the claim."  Affiliated Mfrs. Inc. v. Aluminum Co. of Am., 56 F.3d 521, 527 (3d Cir. 1995).

Savy Surfers would like the Court to characterize the Herslip email simply as a "business communication" because the email does not dispute the validity of Entertech's claim or the amount of such claim: "Wings offered to pay the full *amount owed*, plus interest, but deviated only in that it requested the payment be over a period of 7 years rather than in one lump sum.  Wings not only offered to pay the full *amount owed*, but also agreed to pay 4% interest, clearly admitting its liability for the Outstanding Amount."  See Doc. No. 18, p. 8-9 (emphasis in original).

Regardless of whether Wings expressly disputed the amount owed or the validity of Entertech's claim in Herslip's email, the record is clear that a dispute existed at the time of Herslip's email.  Only weeks prior to Herslip's email, Wagner had sent a letter to Herslip demanding payment of the $210,671.69.  See Doc. No. 1-6.  In the letter, Wagner requested payment from Wings "in full no later than October 15[,] 2016" and indicated an "[o]pen balance at that date will be forwarded to third party for collection, and may incur additional fees" and "lack of payment may result in notification to Buffalo Wild Wings Corporate office."  Id.  In response, Herslip's email outlined payment of the balance in monthly payments over seven (7) years, as opposed to payment by October 15, 2016.  Further, in his email, Herslip specifically and expressly stated the terms outlined in the email constituted an "offer of settlement."  See Doc. No. 1-7.  The tone of Wagner's letter, particularly the threat of third-party collection, and Herslip's email in

response, clearly demonstrate there was a "difference of opinion" between Wings and Entertech regarding Entertech's claims for payment. See Affiliated Mfrs., 56 F.3d at 527. Moreover, nothing in either the plain language of Rule 408 or Eighth Circuit caselaw requires the offer of compromise to expressly and outwardly dispute the amount or validity of a disputed claim. The Herslip email squarely falls within the purview of Rule 408 as it was an offer by Wings to reach some compromise as to the amounts Wings owed to Entertech. Under the circumstances here, exclusion of the Herslip email at trial promotes the public policy of Rule 408 favoring compromise and settlement.[2]

### III. CONCLUSION

The Court has carefully reviewed the entire record, the parties' briefs, and relevant case law. In the broad exercise of its discretion, the Court **DENIES** the "Plaintiff's Motion in Limine Regarding 9-27-16 Email" (Doc. No. 15).

**IT IS SO ORDERED**

Dated this 30th day of January, 2019.

                                              */s/ Daniel L. Hovland*
                                              Daniel L. Hovland, Chief Judge
                                              United States District Court

---

[2] The Court does not consider whether Herslip's email may be admissible for a purpose other than "to prove or disprove the validity or amount of a disputed claim" as the Plaintiff proffers no other purpose for admission in its motion.